UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DUSTIN ALLEN,

                    Plaintiff,

    vs.

MERCY, INC.,

                    Defendant.

Case No.: 2:24-cv-01193-GMN-NJK

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 44), filed by Defendant Mercy, Inc.  Plaintiff Dustin Allen filed a Response, (ECF No. 47), to which Defendant replied, (ECF No. 48).

For the reasons discussed below, the Court GRANTS Defendant's Motion for Summary Judgment.

I.    <u>BACKGROUND</u>

This action arises from Defendant terminating Plaintiff's employment as an EMT-Paramedic Operations Supervisor. (First Am. Compl. ("FAC"), ECF No. 33).  Defendant terminated Plaintiff after investigating Plaintiff for alleged gross negligence in the performance of his job duties. (*Id.* ¶¶ 24, 31).  But Plaintiff suspects he was terminated because he confronted his supervisor, Kirk Schmitt, Defendant's Regional Director of Southern Nevada, about sexist comments he made to two of Plaintiff's female coworkers. (*Id.* ¶¶ 20, 22, 24, 33).

It is undisputed that Defendant provides emergency medical services ("EMS") and pre-hospital care across the United States, including within Las Vegas, Nevada.  Defendant has two locations in Las Vegas: MedicWest and American Medical Response ("AMR").  These locations provide comprehensive ambulance services including 911 emergency services.

As an Operations Manager, Plaintiff's job duties included working with the scheduling department and his team of operations supervisors to ensure that there was adequate employee coverage, in part to stay compliant with Defendant's existing services contracts. (Berg Dep. 61:6–13, Ex. A-6 to Mot. Summ. J., ECF No. 44-8).

On September 25, 2023, Plaintiff had a conversation with a female coworker, Audra, who expressed to Plaintiff that she does not like Schmitt because he makes "comments that [are] sexist in nature," and feels uncomfortable around him. (Allen Dep. 37:7–14, Ex. A-4, Mot. Summ. J, ECF No. 44-6).  Another female coworker, Stephanie, also expressed to Audra that she was uncomfortable being around Schmitt because of the sexist comments he makes. (*Id.* 37:18–38:3).  Plaintiff does not know what the sexist comments made were. (*Id.* 46:11–20). But Plaintiff encouraged Audra to report the allegations to HR and told her to advise Stephanie to do the same. (*Id.* 38:4–13, 44:25–45:1).  Plaintiff did not report Stephanie and Audra's allegations to HR himself because he "didn't have any of the details about the allegations," and did not probe for any details because he is not part of the HR department. (*Id.* 40:7–19).

Plaintiff confronted Schmitt about the allegations two days after his conversation with Audra. (*Id.* 45:15–16).  Plaintiff also spoke with Schmitt about the way he generally spoke to people, both men and women. (*Id.* 47:6–9).  Plaintiff details that Schmitt was rude and condescending to a coworker, made another coworker cry, and raised his voice frequently. (*See id.* 47:12–50:14).  Plaintiff's goal in speaking with Schmitt was to get him "to be a little bit more mindful of the interactions he had." (*Id.* 46:25–47:2).  Plaintiff states that "the spirit of the conversation" with Schmitt was to "fix. . . a toxic work environment. . . [and] if there was any sort of inappropriate [sic] with the [sexist] comments, that was up for the corporate HR to discuss and investigate." (*Id.* 53:8–16).

Nearly a month later, there was a staffing shortage during a weekend shift that Plaintiff was held responsible for based on his job duties.  On October 22, 2023, for one hour, there

were no Advance Life Support vehicle units scheduled. (Schmitt Dep, 49:17–50:6, Ex. A-2 to Mot. Summ. J., ECF No. 44-4).  This is called a "critical system failure." (*Id.* 51:20–52:2). Plaintiff was placed on administrative leave pending an investigation into the staffing shortage that led to the critical system failure and was ultimately terminated effective October 31, 2023. (Cuccinello Dep. 62:20–21, Ex. A-7 to Mot. Summ. J., ECF No. 44-9).

## II.   <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.    **DISCUSSION**

Plaintiff brings claims for retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* and retaliation in violation of NRS 613.340. Title VII and NRS 613.340 prohibit an employer from retaliating against an employee who opposes unlawful employment acts. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *see* NRS 613.340. To establish a prima facie case for retaliation under Title VII and NRS, an employee must show (1) that he engaged in a protected activity, (2) he subsequently experienced an adverse employment action, and (3) a causal link exists between the two. *Id.* Plaintiff's state and federal claims for retaliation are similarly analyzed so the Court considers them together. *See Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) (finding that in light of similarities between state and federal statutes, Nevada courts look to the federal courts for guidance in discrimination cases).

Once a plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If the defendant does so, the plaintiff bears the ultimate burden of demonstrating that the reason was merely pretext for a discriminatory motive. *Id.*

Defendant argues that Plaintiff cannot establish the first element of a prima facie case of retaliation and further fails to demonstrate pretext. (Mot. Summ. J. 12:17, 13:15, ECF No. 44). The Court need only address Defendant's first argument.

Under Title VII, an employee has engaged in a protected activity if he (1) has opposed any practice made an unlawful employment practice; or (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. *See* 42 U.S.C. ¶ 2000e-3(a); *Sias v. City Demonstration Agency*, 588 F.2d 692, 694 (9th Cir. 1978) (noting that "this section contains two different clauses known, respectively, as the 'participation' and the 'opposition' clause"). The Ninth Circuit, in *E.E.O.C. v. Crown Zellerbach Corp.*, held that "[t]he employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to some practice by the employer that is allegedly unlawful." *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983). The Ninth Circuit further determined:

> It is not necessary, however, that the practice be demonstrably unlawful; opposition clause protection will be accorded whenever the opposition is based on a "reasonable belief" that the employer has engaged in an unlawful employment practice. But a simple assertion that an employer is personally bigoted, without more, is not statutorily protected opposition to an "unlawful employment practice."

*Id.* (citations omitted); *see also Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978) ("When an employee reasonably believes that discrimination exists, opposition thereto is opposition to an employment practice made unlawful by Title VII even if the employee turns out to be mistaken as to the facts."). There, the Ninth Circuit determined that a letter stating that "racism" and "discrimination" were prevalent at the company constituted "protected activity" under a Title VII claim. *Id.*

During Plaintiff's deposition, he testified that, on September 25, 2023, he had a conversation with a female coworker, Audra, who expressed to Plaintiff that she does not like

Schmitt because he makes "comments that [are] sexist in nature," and feels uncomfortable around him. (Allen Dep. 37:7–14, Ex. A-4, Mot. Summ. J).  Plaintiff stated that another female coworker, Stephanie, also expressed to Audra that she was uncomfortable being around Schmitt because of the sexist comments he makes. (*Id.* 37:18–38:3).  Plaintiff does not know what the sexist comments made were. (*Id.* 46:11–20).  But Plaintiff encouraged Audra to report the allegations to HR and told her to advise Stephanie to do the same. (*Id.* 38:4–13, 44:25–45:1).  Plaintiff did not report Stephanie and Audra's allegations to HR himself because he "didn't have any of the details about the allegations," and did not probe for any details because he is not part of the HR department. (*Id.* 40:7–19).

While Plaintiff did not report Stephanie and Audra's allegations of sexist comments to HR, he did speak with Schmitt about the allegations two days after his conversation with Audra. (*Id.* 45:15–16).  Plaintiff also spoke with Schmitt about the way he generally spoke to people, both men and women. (*Id.* 47:6–9).  Plaintiff details that Schmitt was rude and condescending to a coworker, made another coworker cry, and raised his voice frequently (*See id.* 47:12–50:14).  Plaintiff's goal in speaking with Schmitt was to get Schmitt "to be a little bit more mindful of the interactions he had." (*Id.* 46:25–47:2).  Plaintiff states that "the spirit of the conversation" with Schmitt was to "fix. . . a toxic work environment. . . [and] if there was any sort of inappropriate [sic] with the [sexist] comments, that was up for the corporate HR to discuss and investigate." (*Id.* 53:8–16).

Defendant argues that the record fails to support a finding that Plaintiff participated in a protected activity because Plaintiff does not know what the alleged sexist comments made by Schmitt were but did not believe they rose to the level of reporting the behavior to HR himself. (Mot. Summ. J. 12:25–26).  Moreover, Defendant contends that there is no evidence that Plaintiff made the complaint in the context of illegal discrimination under Title VII to trigger its classification as a "protected activity." (*Id.* 12:22–24).  First, Plaintiff need not report the

allegations to HR to succeed on a retaliation claim.  Making an informal complaint to a supervisor can be considered a protected activity, *if* Plaintiff was acting on a reasonable belief that an unlawful employment practice had occurred. *Ray*, 217 F.3d at 1240 n. 3 (9th Cir. 2000). Here, while Plaintiff complained to his supervisor regarding the sexist comments he made, Plaintiff did so to remedy a toxic work environment, not because he was acting on a reasonable belief that an unlawful employment practice had occurred. (*See* Allen Dep. 53:8–16, Ex. A-4, Mot. Summ. J).  Indeed, Plaintiff did not know whether any unlawful employment practices had occurred, took no position on whether he thought an unlawful act occurred, and instead deferred to HR to investigate whether there was anything inappropriate about the sexist comments.  Thus, Defendant meets its initial burden of negating an essential element of Plaintiff's claim—the element of protected activity.

The burden now shifts to Plaintiff.  Plaintiff argues that he reasonably believed that Audra's allegations of Schmitt making sexist comments fell under the category of unlawful discriminatory acts. (Resp. 22:22–24, ECF No. 47).  But Plaintiff fails to cite any part of the record to support his argument.  Plaintiff cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor*, 880 F.2d at 1045. Plaintiff therefore fails to establish a genuine dispute of material fact regarding this element such that Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

///

///

///

///

///

///

///

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 44), is **GRANTED**.

The Clerk of Court is kindly directed to enter judgment in favor of Defendant and close the case.

**DATED** this __27__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court